```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                              :
UNITED STATES OF AMERICA                      :
                                              :
           - against -                        :   OPINION AND ORDER
                                              :
JOHN A. GOTTI, et al.,                        :   04 Cr. 690 (SAS)
                                              :
                    Defendants.               :
                                              :
------------------------------------------------------------X
```

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

On July 21, 2004, a grand jury in the Southern District of New York indicted John A. Gotti, Jr. ("Gotti") on a number of charges, including alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Among the predicate acts charged in the indictment are the kidnaping and attempted murder of Curtis Sliwa in 1992, two additional attempted murders in 1990 and 1991, a conspiracy to commit securities fraud by using the mail and wires from 1995 to 2002, a conspiracy to extort construction contractors from 1991 to 2002, and loansharking from 1991 to 2002. The indictment also alleges the securities fraud, extortion, and loansharking charges as substantive counts. Gotti has moved to dismiss the indictment, at least partially, on the grounds that

the charges are barred by the terms of his 1999 plea agreement.[1] In the alternative, Gotti moves to preclude the Government from using any evidence in his upcoming trial that was known to the Government at the time of his 1999 guilty plea.

## II. BACKGROUND

On April 5, 1999, Gotti pled guilty in the Southern District of New York to RICO, loansharking and tax charges pursuant to a written plea agreement with the United States Attorneys' offices for both the Southern and Eastern Districts of New York. The plea agreement contained the following provision (hereinafter, the "coverage provision"):

> The Offices have no present intention to indict defendant Gotti for additional crimes based on the evidence currently known to the Offices. Nothing in this agreement, however, precludes indictment if any additional evidence or information whatsoever comes to the Offices' attention, including but not limited to as a result of any pending investigation.[2]

In addition, the agreement contained a generic integration clause, which stated that

---

[1] In his moving papers, Gotti specifies several charges that he believes should be dismissed on these grounds: Racketeering Act One (kidnaping and attempted murder of Curtis Sliwa), Racketeering Act Eight and Count Eight (conspiracy to extort construction contractors), and Racketeering Act Nine (loansharking). See Memorandum of Law in Support of Defendant John A. Gotti's First Set of Pretrial Motions ("Gotti Mem.") at 21-23.

[2] 4/5/99 Plea Agreement in *United States v. Gotti*, No. 98 Cr. 42 (BDP) ("1999 Agr."), Ex. B to 12/9/04 Affidavit of Marc Fernich, Counsel to Gotti ("12/9/04 Fernich Aff."), at 2.

the agreement "supercede[d] any prior understandings, promises, or conditions between the Offices . . . and the defendant [Gotti]" and further stated that "[n]o additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties."[3]

At the Rule 11 proceeding, the Honorable Barrington D. Parker, who was at that time a United States District Judge in the Southern District of New York, asked Assistant United States Attorney Carol Sipperly to summarize the agreement's "salient terms," while stating that "[t]he written document is the agreement."[4] When Sipperly reached the coverage provision that is quoted in full above, Gotti's attorney Gerald Shargel asked the Court for permission to be heard on that subject. Shargel then stated:

> I want to report to the Court that this plea that's being taken this evening is being taken in the interest of finality and closure, and the language of the plea agreement gives Mr. Gotti closure as to all present investigations, and that's something that we want to put on the record and is being put on the record with the knowledge and consent of the Government as reported by Mr. [Mark] Pomerantz [a former AUSA who was at that time the Chief of the Criminal Division in the United States Attorney's

---

[3] *Id.* at 11.

[4] 4/5/99 Transcript of Guilty Plea in *United States v. Gotti*, No. 98 Cr. 42 (BDP) ("Rule 11 Tr."), Ex. A to 12/9/04 Fernich Aff., at 23.

Office in the Southern District].[5]

When asked by the Court what language he was referring to, Shargel replied, "[I]t's the language that appears on Page 2, in the last paragraph of the agreement, as amplified by what I just reported as my conversation with Mr. Pomerantz, representing both his district and the Eastern District."[6]

Sipperly then responded, "When Mr. Shargel said that to us this afternoon, we said yes, and the sentences say what the sentences say, that we negotiated this paragraph. It was very heavy negotiations and those are the two sentences that have been agreed upon, and they say what they say."[7] Pomerantz added:

> The language of the plea agreement states the agreement of the parties. To the extent Mr. Shargel's statement is intended to change the substance of the protection that is afforded by the plea agreement, which was negotiated, as everyone here well knows, it is the language of the plea agreement that governs. We fully respect Mr. Gotti's desire to have closure with regard to any pending investigations. He has the closure provided for in the agreement, and I had understood that was agreeable to all parties.[8]

Thereupon, Shargel again insisted that the language in question "gives Mr. Gotti

---

[5]     *Id.* at 25.

[6]     *Id.* at 25-26.

[7]     *Id.* at 26.

[8]     *Id.*

closure as to all present investigations."[9] In addition, Shargel reiterated that Pomerantz gave him permission to state on the record his view as to the meaning of the coverage provision and suggested that the words "closure as to all present investigations" came from Pomerantz himself.[10]

After conferring with Pomerantz, Sipperly made the following statement:

> What Mr. Shargel said and what the Government agreed to was this: Mr. Gotti asked for this language, and it was his desire to find closure with this disposition and he asked for that language. We understand that . . . what he wants is closure. In the meantime, the agreement speaks for itself. [Gotti] cannot be indicted unless there is additional evidence that comes to the attention of the offices, and that's the agreement of the parties.[11]

Pomerantz then "elaborate[d]" on Sipperly's statement as follows: "We believe that the language of the agreement gives [Shargel] and his client the closure that they sought in our negotiations, but the language is the language. I think that's clear."[12]

After acknowledging that "the language of the agreement . . . was the

---

[9]     *Id.* at 27.

[10]     *Id.*

[11]     *Id.* at 27-28.

[12]     *Id.* at 28.

-5-

subject and product of continued negotiations," Shargel again offered "a statement of interpretation":

> I would like to state again that the language of the agreement gives Mr. Gotti closure as to all present investigations. I think we are trying to achieve the same thing, and I think that we don't really — I think that we are — I won't say drowning in semantics, but we are troubled by semantics. I think both sides agree that the purpose of this plea or one of the key purposes of this plea, one of the key considerations for this plea is Mr. Gotti's desire to have all this put behind him, so he can move on with his life. . . . [O]ne of the essential reasons for this plea this evening is finality and closure, and Mr. Pomerantz has given me the comfort of being able to make this statement for the Court, and I will rest on the statement.[13]

Pomerantz replied to this, "Very well, Judge."[14]

Later in the proceeding, Judge Parker asked Gotti whether he believed that he had "reached any understanding or deal or agreement with the Government that's not set forth in the letter," to which Gotti replied, "No, Your Honor."[15] Shargel then stated, "I think the purpose of Your Honor reviewing the agreement is that it's Mr. Gotti's understanding of the language as amplified by [AUSA] Sipperly, as amplified by myself with what I said."[16] Thereupon, Gotti

---

[13] *Id.* at 28-29.

[14] *Id.* at 29.

[15] *Id.* at 35.

[16] *Id.* at 36.

indicated that his understanding "[i]nclud[ed] Mr. Shargel's statement."[17] The Government made no response to this statement. Shortly thereafter, Gotti formally entered his guilty plea.

## III. APPLICABLE LAW

The Second Circuit has stated, "[w]e have long interpreted plea agreements under principles of contract law . . . but have noted that plea agreements are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain."[18] Consequently, courts are required to "hold the Government to the most meticulous standards of both promise and performance."[19] In keeping with these principles, the Second Circuit has instructed that in determining whether a plea agreement has been breached, a court should look to the reasonable understanding of the parties as to the terms of the agreement and resolve any ambiguities against the Government.[20]

---

[17] *Id.*

[18] *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999) (quotation marks and citations omitted).

[19] *Id.* (quotation marks omitted).

[20] *See United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002). *See also United States v. Cunningham*, 292 F.3d 115, 117 (2d Cir. 2002) ("[A]ware of the Government's advantage in bargaining power and recognizing that the Government usually drafts plea agreements, we construe such agreements strictly against the Government.") (quotation marks omitted); *Stern v. Shalala*, 14 F.3d

Furthermore, the Second Circuit has stated that "in appropriate circumstances, we might consider relaxing the parole evidence rule in order to hold the Government 'to the most meticulous standards of promise.'"[21]

## IV. DISCUSSION

In his motion papers, Gotti contends that several charges in the present indictment violate the "language and spirit" of the plea agreement as "supplemented in the oral plea colloquy."[22] At oral argument, Gotti acknowledged, however, that the written agreement, on its own, does not provide him the protection he seeks.[23] Gotti's argument therefore hinges on whether Pomerantz made an oral promise or representation to Gotti or his lawyers that contradicted the language of the written agreement.

As an initial matter, a review of the transcript of the Rule 11 proceeding before Judge Parker makes clear that the Government did not accept, as Gotti claims, Shargel's interpretation of the coverage provision. In his

---

148, 150 (2d Cir. 1994) ("Courts enforce what the defendant reasonably understood the plea agreement to mean when the guilty plea was entered.") (quotation marks and citation omitted).

[21] *Altro*, 180 F.3d at 376 (quoting *United States v. Lawlor*, 168 F.3d 633, 636 (2d Cir. 1999)).

[22] Gotti Mem. at 3.

[23] *See* 4/12/05 Transcript of Oral Argument ("4/12/05 Tr.") at 11.

submissions to the Court as well as at oral argument, Gotti maintained that Pomerantz's words, "[v]ery well, Judge," constitute acquiescence to Shargel's position. The record clearly indicates otherwise. Pomerantz and Sipperly repeatedly objected to Shargel's attempts to supplement the written plea agreement and stated unequivocally four times that the language of the agreement spoke for itself. Moreover, in a sworn affidavit submitted at the request of the Court, Pomerantz asserted that he made no further substantive statement in response to Shargel's final statement concerning the coverage clause because "he believed that the record was sufficiently clear at this point that the written plea agreement governed the parties' expectations."[24] These statements leave no doubt as to the Government's position, and Gotti's focus on the words "[v]ery well, Judge" is unavailing.[25]

Similarly, the Government's silence following Gotti's statement that his understanding of the agreement included his lawyer's remarks concerning

---

[24] 4/22/05 Affidavit of Mark F. Pomerantz ("Pomerantz Aff.") ¶ 10.

[25] *Stern v. Shalala*, which Gotti believes compels enforcement of Shargel's interpretation of the coverage provision, is inapposite. In *Stern*, the Second Circuit enforced the defendant's understanding of a written plea agreement because that understanding had been articulated by both the prosecutor and the District Judge at the defendant's plea allocution. *See Stern*, 14 F.3d at 150. By contrast, in this case, Gotti's understanding of the agreement was articulated only by his own lawyer and was repeatedly rejected by the Government.

finality and closure does not constitute a tacit endorsement of Shargel's position. As discussed above, the Government repeatedly stated at the Rule 11 proceeding that the language of the written plea agreement spoke for itself. Therefore, I conclude that Gotti could not have reasonably believed that the Government had changed its position, during the plea colloquy, regarding the protection afforded Gotti by the coverage provision. Put another way, the Government's silence after Gotti's statement is not sufficient to render Shargel's amplification of the coverage provision an enforceable term of the plea agreement.[26]

That leaves open the question of whether the Government induced Gotti's guilty plea by means of an oral promise or representation not reflected in the written agreement. Notwithstanding the generic integration clause, if there was such a promise, due process would require the Government to abide by it, provided that the promise in fact induced the waiver of the defendant's

---

[26] Gotti's reliance on *United States v. Harvey*, 791 F.2d 294 (4th Cir. 1986), is misplaced. In that case, the court held that the defendant's understanding of a prior plea agreement was enforceable in part because at the Rule 11 proceeding the prosecutor "stood mute" in the face of "clear manifestations by [the defendant] and his counsel of their understanding [of the immunity provision], and the arguably similar manifestations by the court." *Id.* at 302. In this case, however, the Government did not stand mute in the face of Shargel's amplification of the coverage provision. Rather, Pomerantz and Sipperly repeatedly stated that the language of the written agreement spoke for itself. Moreover, in *Harvey*, the court found that the disputed immunity provision was intrinsically ambiguous. *Id.* at 301. That is not the case here.

constitutional right to a trial.[27] At oral argument on this motion, Gotti's counsel proffered that prior to the Rule 11 proceeding Pomerantz represented to Shargel that he would be permitted to make a statement on the record to "supplement or amplify" the written plea agreement.[28] Gotti's counsel further proffered that this statement — to the effect that the agreement provided Gotti "finality and closure with respect to all pending investigations" — was dictated by Pomerantz.[29] At the Court's request, Pomerantz and Shargel, who were the lead negotiators as the parties neared a plea agreement, have each submitted affidavits concerning their respective recollections of any oral promises or representations made on the evening of April 5, 1999, prior to the Rule 11 proceeding.

In his affidavit, Pomerantz states that Gotti received no assurances beyond those in the written agreement: "There were no side agreements, secret understandings, verbal expansions, or other commitments of any kind. As I stated in open court on April 5, '[t]he language of the plea agreement states the

---

[27] *See United States v. Heatley*, No. 96 Cr. 515, 1999 WL 61816, at *9 n.7 (S.D.N.Y. Jan. 29, 1999) (suggesting that a generic integration clause in a proffer agreement would not preclude consideration of additional oral promises made by the Government).

[28] 4/12/05 Tr. at 28.

[29] *Id.* at 29.

agreement of the parties.'"[30] More specifically, Pomerantz denies that he dictated any statement to Shargel to be stated on the record at the Rule 11 proceeding:

> On the day of the plea, Mr. Shargel indicated that he wanted to put on the record a comment about his client's desire to achieve finality and closure with respect to pending investigations. He was told that his client got such finality and closure as the plea agreement gave him, and no more or less. I believe that I told him that the Government would not object to his statement about 'finality and closure,' provided he made it clear that the 'finality' and 'closure' Mr. Gotti was receiving came from the explicit language of the plea agreement. Mr. Shargel was told, during all of our discussions, that the Government would not agree to foreclose its options to prosecute Mr. Gotti beyond the extent stated in the plea agreement.[31]

Thus, Pomerantz's affidavit indicates that what prosecutors told Shargel and Gotti prior to the Rule 11 proceeding was consistent with what Pomerantz and Sipperly stated on the record: the explicit language of the plea agreement reflected the entire agreement of the parties.

Shargel's recollection differs from Pomerantz's in only one respect. In his affidavit, Shargel acknowledges that, after intensive negotiations, the Government was unwilling to put in the language of the written agreement the

---

[30] Pomerantz Aff. ¶ 7 (quoting Rule 11 Tr. at 26).

[31] Id. ¶ 8.

protection Shargel was seeking for Gotti.[32] Nevertheless, Shargel states that:

> I was led to believe, by what Mr. Pomerantz and Ms. Sipperly said, that the government had no interest in and would not further prosecute Mr. Gotti on matters that were then the subject of investigation. Before negotiations were concluded, I told the government lawyers that I would state this belief on the record during the change of plea hearing.[33]

Shargel does not point to a specific promise or representation by the prosecutors that led to his belief.

On the basis of these affidavits as well as the transcript of the Rule 11 proceeding, I find that the Government never assented to any protection beyond that afforded by the written agreement. While it is true that the Government is held "to the most meticulous standards of both promise and performance,"[34] there is no reliable evidence of a promise or representation that authorized Shargel to supplement or amplify the coverage provision at the Rule 11 proceeding. Rather, there is nothing but Shargel's indistinct recollection that he had been led to believe that the Government "had no interest in and would not further prosecute" Gotti.[35] In the absence of any written or oral promise by the Government, Gotti's

---

[32] See 4/21/05 Affidavit of Gerald L. Shargel ("Shargel Aff.") ¶¶ 9-10.

[33] Id. ¶ 10.

[34] Altro, 180 F.3d at 375.

[35] Shargel Aff. ¶ 10.

understanding that he had gained closure as to all investigations pending at the time of his guilty plea is not enforceable as part of the plea agreement.[36]

According to an old legal maxim, "God may know but the record must show."[37] The rather harsh truth in this case is that if Gotti wanted closure in return for his guilty plea, he should have insisted on memorializing the alleged promise in writing or in a clear acknowledgment by the Government on the record.

In the absence of an oral agreement to supplement or amplify the written plea agreement, the unambiguous language of the coverage provision is controlling. That provision makes clear that Gotti is *not* immune from prosecution

---

[36] Gotti relies on *United States v. Cucciniello*, Crim. No. 89-206, 1990 WL 119317, at *5 (D.N.J. Aug. 9, 1990), for the proposition that the Government should not accept a defendant's plea if his comprehension of the terms of the agreement is unclear. See Gotti Mem. at 20; 4/12/05 Tr. at 17. The cases are distinguishable, however. In *Cucciniello*, the court found that "[t[he critical term of the agreement [was] not clear and [did] not support the Government's contention as to its meaning." *Cucciniello*, 1990 WL 119317, at *4. The court concluded that "in the absence of any clarification, the circumstances leading up to and surrounding the plea of guilty reasonably explains defendant's mistake as to the consequences of the plea." *Id.* at *5. By contrast, in this case, it is undisputed that the coverage provision did not provide Gotti the protection he was seeking. Indeed, it would be unreasonable to read the provision as providing closure as to all investigations pending at the time of the plea. Gotti cannot, therefore, claim that he was reasonably mistaken as to the consequences of his agreement. The language itself is clear, and the Government stated repeatedly at the Rule 11 proceeding that this language was the only agreement between the parties.

[37] *Jones v. Vacco*, 126 F.3d 408, 417 (2d Cir. 1997).

for crimes under investigation at the time of his plea, so long as some additional evidence or information comes to the Government's attention. The Government proffers that such evidence — in the form of nine new cooperating witnesses since the time of Gotti's plea — has indeed come to light.[38] Gotti's motion to dismiss portions of the indictment on the grounds that they violate his 1999 plea agreement must, therefore, be denied.

In the alternative, Gotti argues that the language of the coverage provision requires that any evidence in the Government's possession at the time of the 1999 guilty plea must be excluded from the upcoming trial. Gotti relies on *United States v. Smith*,[39] in which the Fourth Circuit held that an immunity provision, which stated that "[t]he United States will not prosecute of [sic] Mr. Smith for any federal offense based on information now in the possession of the [G]overnment," prohibited the Government from prosecuting the defendant *using* any evidence in its possession at the time of the guilty plea.[40] However, even assuming that the Fourth Circuit's interpretation is persuasive, the cases are

---

[38] *See* Government's Memorandum of Law in Opposition to Defendant John A. Gotti's Pre-Trial Motions at 13.

[39] 976 F.2d 861 (4th Cir. 1992).

[40] *Id.* at 862, 864.

distinguishable. The coverage provision in Gotti's plea agreement stated: "The Offices have *no present intention* to indict defendant Gotti for additional crimes based on the evidence currently known to the Offices."[41] The phrase "no present intention" plainly means that the Government was not foreclosing itself from prosecuting Gotti in the future. In the following sentence, the coverage provision made clear that the Government's intention to indict depended on whether "any additional evidence or information" came to the Government's attention "including but not limited to as a result of any pending investigation."[42] Thus, the most Gotti can argue based on *Smith* is that "no present intention to indict" Gotti is somehow equivalent to "no present intention to use evidence" in the Government's possession at the time of the 1999 guilty plea. But this reading does not restrict the Government from using the evidence in its possession at that time, as long as new evidence or information is obtained, even as a result of an investigation that was pending when the plea agreement was reached. Consequently, the coverage provision does not bar the Government from using information in its possession at the time of the plea.

## V. CONCLUSION

---

[41] 1999 Agr. at 2 (emphasis added).

[42] *Id.*

For the foregoing reasons, Gotti's motion to dismiss the indictment on the grounds that some charges violate his 1999 plea agreement is denied. In addition, Gotti's motion to suppress evidence in the Government's possession at the time of the plea agreement is also denied. The Clerk of the Court is directed to close this motion (docket # 37).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
May 13, 2005

# - Appearances -

**For the Government:**

Michael G. McGovern
Joon H. Kim
Victor Hou
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2198


**For Defendant John A. Gotti:**

Marc Allan Fernich, Esq.
Law Office of Marc Fernich
570 Lexington Avenue, 16th Floor
New York, New York 10022
(212) 446-2346

Jeffrey Lichtman, Esq.
Law Office of Jeffrey Lichtman
1790 Broadway, Suite 1501
New York, New York 10019
(212) 581-1001


**For Defendant Joseph D'Angelo:**

Barry Levin, Esq.
666 Old Country Road
Suite 406
Garden City, New York 11530
(516) 222-4500

**For Defendant Michael Yannotti:**

Diarmuid White, Esq.
White & White
148 East 78th Street
New York, New York 10021
(212) 861-9850


**For Defendant Louis Mariani:**

Charles F. Carnesi, Esq.
1225 Franklin Avenue
Garden City, New York 11758
(516) 512-8914